IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LIFE INSURANCE COMPANY OF                     Civil No. 04-6204-AA
NORTH AMERICA, a Pennsylvania                  OPINION AND ORDER
Corporation,

        Plaintiff,

    vs.

DARLENE SIMMONS, BRIAN HENSCHEL,
LAURI RENSHAW, and PROGENY
MARKETING INNOVATIONS f/k/a BCI,
a foreign corporation,

        Defendants.

_____

Katherine S. Somervell
Bullivant Houser Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
    Attorney for plaintiff

James G. Nelson
Nelson & MacNeil, P.C.
PO Box 946
Albany, Oregon 97321
    Attorney for defendant/cross claimant
    Darlene Simmons

Page 1 - OPINION AND ORDER

K. Michael Fandel
David Byers
Graham & Dunn PC
Pier 70-2801 Alaskan Way, Suite 300
Seattle, Washington 98121
    Attorneys for defendant/cross defendant
    Progeny Marketing Innovations

Joel Kalberer
Weatherford Thompson Cowgill
PO box 667
Albany, Oregon 97321-0219
    Attorney for defendants Brian Henschel
    and Lauri Renshaw

AIKEN, Judge:

Plaintiff Life Insurance Company of North America (LINA) moves for summary judgment on its Second Claim for Relief and on defendant Simmons' counterclaims. Cross defendant Progeny Marketing Innovations (Progeny) moves to dismiss Simmons' cross claims or alternatively moves to compel arbitration of those claims. LINA's summary judgment motion is granted as to its Second Claim for Relief and as to Simmons' counterclaims. Progeny's motion to dismiss is denied; and its alternative motion to compel arbitration is granted.

BACKGROUND

On August 8, 2002, the insured, Ernest Henschel, died in an accidental mill explosion while at work. At the time of his death, he was insured under a LINA group Accidental Death policy obtained through his credit union, Central Willamette Credit Union. Ernest Henschel was previously insured under a Balboa Life Insurance Policy, also provided by the Credit Union, which

Page 2 - OPINION AND ORDER

terminated on October 31, 1993.  The face page of the Balboa

policy indicated that Darlene Simmons was the named beneficiary

of the policy.  In November 1993, after the Balboa policy was

terminated, it was replaced by LINA's group Accidental Death

insurance policy.  In November 1997, LINA replaced its 1993

policy with a new policy.  Ernest Henschel was insured under both

the 1993 and 1997 LINA policies.

Pursuant to a Administrative Services Agreement (ASA)

between Progeny and LINA, Progeny agreed to act as the third-

party administrator for the Credit Union group coverage.

Progeny's role was to assemble claims information and forward it

to LINA for payment.  The ASA was the contract that governed the

relationship between Progeny and LINA at the time of Ernest

Henschel's death.

The ASA contained numerous provisions describing the rights

and obligations of the parties.  For example, LINA was

responsible under the ASA for issuing policies of insurance,

determining benefits and underwriting criteria, and handling "all

aspects of claims settlement."  Progeny was obligated to provide

administrative services with respect to the sales of policies, to

maintain a record of insureds, and to forward notices of claims

to LINA.  Progeny was prohibited under the contract from making

any claims determinations or paying claims on behalf of LINA.

On December 2, 2002, LINA received from Progeny a packet of

information related to the death of Ernest Henschel.  The only

Proof of Loss form contained in the packet was completed by

Ernest Henschel's son, Brian Henschel.  Because the documents in

the packet did not indicate that Brian Henschel was the named

beneficiary, LINA contacted Progeny to inquire whether it had a

beneficiary designation form on file.  Progeny responded that it

did not have a beneficiary designation form on file for Ernest

Henschel.

The accidental death policy issued by LINA in force at the

time of Ernest Henschel's death provided that proceeds would be

paid as follows:

> Payment of Claims - Your loss of life benefits will be
> paid to the beneficiary named in our files.  If you
> have designated more than one beneficiary your benefits
> will be divided equally among all beneficiaries you
> have named, unless you have directed us otherwise.  If
> there is no surviving beneficiary, your loss of life
> benefits will be paid in one lump sum to the first
> surviving class of the following classes of beneficiaries:
> a) your wife or husband; b) your child or children;
> c) your mother and father; d) your sisters and brothers.

Concerning a beneficiary designation for the policy, the

original policy issued by LINA in 1993 stated:

> Change of Beneficiary.  The member has the right
> to select or change the beneficiary; without needing
> the beneficiary's consent.  Any such selection or
> change must be in writing.  We will not be bound
> until we have received a signed copy of it; we
> are not responsible for its validity or sufficiency.

Because Progeny represented to LINA that its files did not

contain a beneficiary designation, and because Ernest Henschel

did not leave a surviving spouse, LINA authorized payment of the proceeds to his children, Brian Henschel and Lauri Renshaw, in accordance with the above quoted policy provision. On December 12, 2002, the date LINA authorized payment to Henschel and Renshaw, it had not received notification that any other individual was asserting a claim to the proceeds.

Nearly one month after LINA had paid the proceeds of the policy, on January 7, 2003, LINA was contacted by defendant/cross claimant Darlene Simmons' attorney inquiring about the status of the claim she had previously submitted to Progeny. LINA told the attorney it had not received any information on this claim and requested that the attorney fax the information to LINA. Among the documents that Simmons' attorney faxed to LINA was a Proof of Loss form completed by Simmons stating that she was the named beneficiary of the policy. LINA contacted Progeny and was again told that Progeny did not have a beneficiary designation form on file for Ernest Henschel. On February 6, 2003, Simmons' attorney faxed to Progeny a copy of the prior Balboa Life Insurance policy listing Simmons on its face page as the policy beneficiary.

By letter dated March 14, 2003, LINA advised Simmons' attorney that it was denying her claim to the policy proceeds. LINA then filed this action to determine the proper beneficiary of Ernest Henschel's accidental death policy. In addition to requesting a beneficiary determination, LINA's Second Amended

Complaint sought indemnification from Progeny under the theory that Progeny failed to provide LINA with all the claim information required under the ASA.

The ASA included a requirement that any dispute between the parties under the Agreement "shall be submitted to binding arbitration."  ASA, ¶ 29.  Based on that requirement, Progeny moved for an order compelling LINA to bring its indemnification claim in arbitration, and staying these proceedings against Progeny.  Alternatively, Progeny moved to dismiss LINA's claim against Progeny as premature and non-justiciable.  On July 13, 2005, pursuant to Fed. R. Civ. P. 41(a)(1)(I), LINA filed a notice voluntarily dismissing all of its claims against Progeny.

On July 18, 2005, although Progeny was no longer a party in the lawsuit, Simmons filed a pleading titled, "Answer and Counterclaim of Darlene Simmons, Cross-Claim of Darlene Simmons Against Progeny Marketing Innovations" (Simons' Answer).  Based on the ASA in existence between Progeny and LINA, Simmons asserts that she is entitled to recover from Progeny because Progeny negligently failed to discover information relating to Simons' alleged status as a beneficiary under Henschel's policy, and failed to provide that information to LINA prior to LINA paying the policy benefits to Henschel's children.  Simmons seeks as damages the amount of money that was paid as proceeds of Henschel's accidental death policy to Henschel's children.

<u>STANDARDS</u>

## I.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Substantive law on an issue determines the materiality of a fact.  <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,</u> 809 F.2d 626, 630 (9ᵗʰ Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute.  <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## II. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984), cert. denied, 470 U.S. 1052 (1985). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).

## DISCUSSION

### I. LINA'S SUMMARY JUDGMENT MOTION

LINA filed its summary judgment motion on September 23, 2005. Defendants, each represented by counsel, had until October 7, 2005, to file any opposition. To date, no opposition has been received by this court, therefore, the court will consider LINA's motion unopposed.

LINA asserts that it is entitled to summary judgment on its Second Claim for Relief because it is fully discharged from liability pursuant to Or. Rev. Stat. § 743.041. That statute provides:

> Whenever the proceeds or payments under a life or
> health insurance policy become payable in accordance

with the terms of such policy, or the exercise of
any right or privilege under such policy, and the
insurer makes payment in accordance with the terms
of the policy or in accordance with any written
assignment of the policy, the person so designated
as being entitled to the proceeds or payments shall be
entitled to receive them and to give full acquittance
therefor, and such payments shall fully discharge the
insurer from all claims under the policy unless,
before payment is made, the insurer has received
at its home office written notice by or on behalf
of some other person that such other person claims
to be entitled to such proceeds or payments or
some interest in the policy.

Id.

The only exception to this discharge of liability is where

the insurer "has received at its home office written notice" that

another person claims an interest in the proceeds.  I find no

dispute in the record that, as of December 12, 2002, LINA had not

received at its home office written notice, or any notice, that

Simmons was asserting a claim to the proceeds.  Again, I note

that defendants have not filed any memorandum or evidence in

opposition to this motion.  Therefore, I find that LINA is

statutorily discharged from liability to Simmons, and summary

judgment is granted as to its Second Claim for Relief, requesting

a Declaratory Judgment pursuant to 28 U.S.C. § 2201 that it is

entitled to a declaration that it has discharged its duties under

the policy and to dismissal from further proceedings that relate

to its ligations under the policy.  Moreover, because LINA is

statutorily discharged from liability to Simmons, and because

Simmons does not oppose this motion, Simmons' counterclaims are

also subject to dismissal.

Therefore, LINA's summary judgment motion is granted as to its Second Claim for Relief for a Declaratory Judgment and as to Simmons' counterclaims.

II. PROGENY'S MOTION TO DISMISS OR COMPEL ARBITRATION

Simmons' cross-claims against Progeny are not subject to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Construing Simmons' cross-claims liberally and taking all of her allegations as true, I cannot find that it appears to a certainty that Simmons is unable to prove any set of facts in support of her claim that would entitle her to relief.  In Hale v. Groce, 304 Or. 281, 744 P.2d 1289 (1987), the Oregon Supreme Court examined facts similar to the case at bar.  There, defendant attorney was directed by his client to prepare a will which included a specific bequest to plaintiff.  After the client's death it was discovered that the bequest was not in the will. Plaintiff sued the attorney on theories of tort and contract. The attorney argued, similar to Progeny's argument here, that the duty of professional care was only to the client and not the plaintiff, his intended beneficiary.  Therefore, the attorney argued, he cannot be sued for malpractice by others who are injured by the way he performs that duty.  The court disagreed and held:

> We hold that the complaint states claims for damages
> under both theories, a claim as the intended beneficiary

of defendant's professional contract with the decedent and
a derivative tort claim based on breach of the duty created
by that contract to the plaintiff as its intended
beneficiary.

* * *

...we agree that the beneficiary in these cases in not only
a plausible but a classic 'intended' third party beneficiary
of the lawyer's promise to his client[.]

* * *

...Because under third party analysis the contract
creates a 'duty' not only to the promisee, the client,
but also to the intended beneficiary, negligent
nonperformance may give rise to a negligence action
as well.

Id. at p. 283, 286.

I find that Simmons' interest in the proper, non-negligent
performance by Progeny in gathering and transferring beneficiary
designations to LINA pursuant to Progeny's contract with LINA to
do so is similar to plaintiff's interest in Hale in the defendant
lawyer's non-negligence performance of drafting client's will
with a bequest to the plaintiff.  As stated in Hale, "the
beneficiary in these cases is not only a plausible but a
'classic' intended third party beneficiary[.]"  Id. at p. 286.

Recently, the Oregon Court of Appeals discussed Hale in a
case also involving residuary beneficiaries' action against an
attorney who promised to prepare the deceased's will to "make the
will invulnerable to a will contest." Caba v. Barker, 193 Or.
App. 768, 771, 93 P.3d 74 (2004).  The will was subsequently
subjected to a contest and failed to approximate the

Page 11 - OPINION AND ORDER

'invulnerability' contemplated by the testator. Plaintiff's beneficiaries alleged several acts and omissions of negligence against the attorney. The court held that there is no requirement that the attorney make a specific promise to the client, that the promise (of invulnerability) may be implied. Id. at 779. The court concluded that plaintiffs had alleged legally sufficient claims for negligence and for breach of contract. Id. at 783.

The Caba court discussed another recent decision, Lord v. Parisi, 172 Or. App. 271, 19 P.3d 358 (2001), noting that "mere foreseeability of harm could not support such an action and that, rather 'some source of a duty outside the common law of negligence is required.'" Caba, 193 Or. App. at 776 (citing Lord, 172 Or. App. at 276, quoting Hale, 304 Or. at 284). The court continued by observing that in Hale, the additional "source of duty" arose from the disappointed beneficiary's status as an intended beneficiary of the attorney's promised performance. Caba, 193 Or. App. at 778. Here, the source of duty arises from Simmons' alleged intended beneficiary status based on the promise, even if an implied promise, by Progeny to LINA, via the ASA, to provide beneficiary information to LINA, including forwarding notices of all claims.

Given the threshold of a Rule 12(b)(6) motion: taking all of Simmons' allegations as true and liberally construing Simmons' claims in her favor, I cannot say that it appears to a certainty

that Simmons is unable to prove any set of facts in support of her claim. Therefore, Progeny's motion to dismiss Simmons' cross-claims is denied.

Progeny argues in the alternative that if Simmons' claims are not subject to dismissal, then they are subject to mandatory arbitration. Progeny requests that this action be stayed pending arbitration. I agree and thereby grant Progeny's alternative motion to stay this action pending arbitration.

Simmons alleges that Progeny was LINA's agent for the purposes of gathering beneficiary information. Simmons further alleges that Progeny was negligent in failing to gather the beneficiary information accurately, and in failing to report to LINA that it had received competing claims to the proceeds of Ernest Henschel's accidental death policy. Because Simmons is seeking to enforce the contractual promises that Progeny made to LINA in the ASA, Simmons must also abide by the obligations of the promisee under the ASA to arbitrate claims relating to contract performance. Because Simmons' claims against Progeny are governed by 9 U.S.C. §§ 2-4 of the Federal Arbitration Act (FAA), and because the ASA is the basis of Simmons' claims which implicates interstate commerce, the FAA applies.

Here, the ASA would prohibit LINA from pursuing claims in this court against Progeny relating to its performance under the contract. The arbitration provision of the ASA applies to all

disputes under the agreement. Simmons' claim falls within the scope of this provision because it depends on Progeny's alleged breach of its contractual obligations. The right of an alleged third party beneficiary is subject to any limitations imposed by the terms of the contract. Restatement (Second) Contracts, § 309, comment b. "Where the contract contains an arbitration clause that is legally enforceable, the general rule is that the beneficiary is bound by it to the same extent that the promisee is bound." 13 Lord, Williston on Contracts, § 37:6 (4th Ed. 2000).

Assuming that Simmons is permitted to sue Progeny, she must arbitrate her claim unless she can show with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute[.]" Native Son v. L&H Development, Inc., 149 Or. App. 623, 627, 944 P.2d 995 (1997), rev. denied, 327 Or. 82, P.2d (1998). Simmons fails to satisfy this standard.

## CONCLUSION

Plaintiff's motion for summary judgment (doc. 39) is granted as to plaintiff's Second Claim for Relief and as to Simmons' counterclaims. Progeny's motion to dismiss or motion to compel arbitration (doc. 36) is granted as follows: the motion to dismiss is denied; the alternative motion to compel arbitration is granted. Simmons' cross claims against Progeny are stayed

pending arbitration.   Further, Progeny's request for oral

argument is denied as unnecessary.

IT IS SO ORDERED.

      Dated this __7__ day of December 2005.




                                        _____/s/ Ann Aiken_____
                                                  Ann Aiken
                                    United States District Judge